Michael Catalauo,. J.
Plaintiffs seek a preliminary injunction restraining defendants from effectuating a plan to promote intergroup education in the Niagara Falls school system (“ Plan 21 ”) adopted by defendant, the Board of Education, School District of Niagara Falls, New York (“ Board of Education ”).
Defendants, Ewald B. Nyquist, Commissioner of Education of the 'State of New York, (“ Commissioner ”) and the Board of Regents of the University of the State of New York (“Regents”) move for change of venue to Albany County (CPLR 506, subd. [b], par. 2; CPLR 6311) without prejudice to their request to participate herein amicus curiae. Upon stipulation of all parties, it is ordered that Commissioner and *1067 Regents are dropped as parties (CPLR 1003) and are added as amicus curiae without prejudice to any party.
The Human Rights Commission of the City of Niagara Falls, New York (“Human Rights”) and the Citizens’ Advisory Committee on Integration (“Advisory Committee”) would appear herein amicus curiae, and upon stipulation of all parties, it is so ordered.
Defendants, Henry J. Kalfas, Superintendent of Schools of the City of Niagara Falls, New York (“ Superintendent ”) and Joseph Chille, President of the Board of Education, School District of Niagara Falls, New York (“President”) and the Board of Education, School District of Niagara Falls, New York (“Board of Education”) move to dismiss the complaint for insufficiency. (CPLR 3211, subd. [a], par. 7.)
The complaint alleges that Plan 21, adopted by the Board of Education, altered the school attendance districts and created circular attendance school districts, whereby certain children are transferred from schools near to their homes to other schools in the City of Niagara Falls school system by means of bussing, without plaintiffs’ consent, in violation of subdivision 2 of section 3201 of the New York Education Law (L. 1969, eh. 342, eff. Sept. 1, 1969); that Plan 21 is unconstitutional and lessens the rental and sales value of plaintiffs’ real property. Whereby plaintiffs demand judgment declaring Plan 21 unconstitutional, and permanently enjoining defendants from enforcing said Plan.
Plaintiffs believe that integration should be achieved and that this problem is national in scope.
Plaintiffs presented evidence involving the transfer of a white pupil in fourth grade and a white pupil in second grade from 95th Street School to Beech Avenue School. The parents of these two children do not object to Beech Avenue School, they only object to transportation by bus; they believe that Beech Avenue School has excellent teachers and facilities, and their two children like the school. Also, two other white children aged 9 and 10 are bussed to Beech Avenue School contrary to their parents’ wishes. So, the parents of four white children are the only formal objectors on record.
A real estate appraiser testified against Plan 21, giving his opinion that the plaintiffs’ real estate fair market value would be adversely affected by it. He gave no sales upon which he based his opinion which was entirely subjective.
January, 1968, the Regents recommended action by school boards to develop and keep up to date a district plan for achieving and maintaining racially integrated schools, and the *1068 establishment and modification of school district boundaries so as to eliminate and avoid those which result in racial segregation. (A Position Paper, No. 3. “ Integration and the Schools, ’ ’ pp. 12-13.)
Here, Plan 21 does just that.
December, 1969, the Regents stated: “We are convinced that the elimination of racial segregation in the schools can enhance the academic achievement of nonwhite children while maintaining achievement of white children and can effect positive changes in interracial understanding for all children. The latter consideration is paramount. If children of different races and economic and social groups have no opportunity to know each other and live together in school, they cannot be expected to gain the understanding and mutual respect necessary for the cohesion of our society.” (“ Integration and the Schools,” p. 3.)
Here, Plan 21 achieves interracial understanding for all children involved.
Plan 21 is the 21st plan studied with the public at large and integration representatives from many cities including the California school systems. The proposal.for intergroup education in Plan 21 states, in part: ‘ ‘ Both black and white children do grow educationally. Children do learn to get along with one another regardless of race, creed, or color. They do, carry over this human relations learning and group dynamics into their adult vocations. Such development sociologically and psychologically has personal and economic benefits. These are the real purposes of intergroup education.” One of the guidelines of Plan 21 is: “ Every effort should be made to see that a child is not moved involuntarily more than once to achieve intergroup education during his elementary school years.”
The Board of Education, in adopting Plan 21, acted with care, caution, and the utmost deliberation and did not act arbitrarily or capriciously in disregard of the rights of any individuals or groups within the boundaries of the school district.
Plan 21 was adopted June 4, 1970 and placed in effect at the opening of schools on September 9, 1970, involving the transportation of more than 1,300 pupils out of about 9,000 elementary school pupils in a district of about 17,500 pupils. If Plan 21 be discontinued at this time the schools would be closed, pupils and teachers would be .reassigned and replaced, transportation contracts would be canceled, pupils would lose instructional time, large public funds would be wasted, State and Federal financial aid would be lost.
*1069 Some of the 21 schools which comprise the elementary education division are presently integrated through housing patterns, school closings, or previously adopted integration plans, so that only those schools not racially balanced are in Plan 21.
Plan 21 covers 8 of 21 schools:
(1) Ashland Avenue School:
Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 200 37 2 165 Black 19 8 24 35 Total 219 45 26 200 % Black 9% 17% (2) Beech Avenue School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 120 . . 169 289 Black 249 141 3 111 Total 369 141 172 400 % Black 67% 27.7% (3) 10th Street School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 114 9 37 142 Black 99 67 8 40 Total 213 76 45 182 % Black 46% 21.9% (4) 22nd Street School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 202 25 . . 177 Black 24 3 21 Total 226 28 198 % Black 10% 10% (5) 24th Street School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 262 39 4 227 Black 22 30 52 Total 284 39 34 279 % Black 7% 19%
*1070 (6) 79th Street School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 486 147 371 Black 25 15 86 96 Total 511 162 86 467 % Black 4.8% 20% (7) 95th Street School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 395 43 352 Black 55 6 61 Total 450 43 6 413 % Black 12% 15% (8) 99th Street School: Present Enrollment Pupil Reassignment Proposed Enrollment Grades K — 5 Out In Grades 1 — 6 White 191 191 Black 51 51 Total 191 5.1 242 % Black 0% 21%
March 24, 1970 President Nixon made a statement on elementary and secondary school desegregation saying, in part: “ I have consistently expressed my opposition to any compulsory bussing of pupils beyond normal geographic school zones for the purpose of achieving racial balance.”
May 21,1970 President Nixon addressed the Congress recommending the expenditure of an additional $1.5 billion, $500 million in fiscal 1971, and $1 billion in fiscal 1972, to assist local school authorities in meeting needs for desegregating schools.
In this case, the bussing of pupils in Plan 21 does not extend beyond normal geographic school zones, except for 31 pupils, a minimal number.
Bussing per se is objected to by the plaintiffs. Yet, junior, high school pupils are bussed when they leave elementary school. Aids or helpers are on buses to protect pupils. Bus-sing to school is universal in outlying rural districts. Also, in cities many parents prefer bussing. Contracts for bussing in this case involve $109,000. State aid to assist Plan 21 consists of $94,338. Congress is providing $75,000,000 for school integration, $200,000 going to the City of Niagara Falls (one of 10 cities), $88,000 of which is allocated to improve Plan 21.
Subdivision 2 of section 3201 of the Education Law (L. 1969, ch. 342, eff. Sept. 1, 1969) provides in part: “ Except with the *1071 express approval of a board of education having jurisdiction, a majority of the members of such board having been elected, no student shall be assigned or compelled to attend any school on account of race, creed, color or national origin, or for the purpose of achieving equality in attendance or increased attendance or reduced attendance at any school, of persons of one or more particular races, creeds, colors, or national origins; and no school district, school zone or attendance unit, by whatever name known, shall be established, reorganized or maintained for any such purpose, provided that nothing contained in this section shall prevent the assignment of a pupil in the manner requested or authorized by his parents or guardian
Here, the Board of Education has been elected and has acted within its jurisdiction. In any event, the statute increases the board’s power to assign “in the manner requested or authorized by his parents or'guardian ” (emphasis supplied) ; it does not impose parental permission as a condition precedent to the board’s authority to transport children to a school within its jurisdiction.
September 14, 1970, Governor Ronald Reagan of California signed into law a bill prohibiting bussing of school children without parental consent, to wit: “No governing board of a school district shall require any student or pupil to be transported for any purpose or for any reason without the written permission of the parent or guardian,” effective November 21, 1970. Opponents of the bill plan to test its constitutionality in the courts. (Buffalo Evening News, Tuesday, Sept. 15,1970.)
It is clear that the California statute requires parental permission before a student may be “ transported for any purpose or for any reason,” whereas, the New York statute (Education Law, § 3201, subd. 2) does not expressly mention the word “ transported ” or “ bussed.”
When the State provides education, it must be furnished to its residents upon the basis of equality of right. (Missouri ex rel. Gaines v. Canada, 305 U. S. 337, 349.)
May 17, 1954, in Brown v. Board of Educ. (347 U. S. 483) Mr. Chief Justice Warren stated that public education must be considered in the light of its full development in American life throughout the Nation. “ Today, education is perhaps the most important function of the state and local government. Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society.” “ To separate them [children] from others of similar age and qualifications solely because of their race generates a feeling of inferiority *1072 as to their status in the community that may affect their hearts and minds in a way unlikely ever to be undone.” “We conclude that in the field of public education the doctrine of ‘ separate but equal ’ has no place. Separate educational facilities are inherently unequal. ” “ Such segregation is a denial of the equal protection of the laws.” (Ibid., 347 U. S. 483, 493, 494, 495.)
Here, Plan 21 does not deny equal protection of law, but rather, promotes it.
May 7, 1964, Chief Judge Desmond asked: “The issue, we repeat, is: May [not must] the schools correct racial imbalance? ” The majority of the Court of Appeals answered, yes. (Matter of Balaban v. Rubin, 14 N Y 2d 193, 199, cert. den. 379 U. S. 881; followed: Matter of Strippoli v. Bickal, 21 A D 2d 365, 368, affd. 16 NY 2d 652.)
Here, Plan 21 corrects racial imbalance in the Niagara Falls schools.
October 22, 1964, the New York Supreme Court, Appellate Division, Fourth Department, declared constitutional an open enrollment plan which included: ‘ ‘ For the purpose of reducing racial imbalance, students enrolled in sending schools were permitted to transfer to receiving schools, upon request for such transfer by th<eir parents.” (Matter of Di Sano v. Storandt, 22 A D 2d 6, 8, emphasis supplied.) This Di Sano case was, decided in 1964, over five years before 1969 when subdivision 2 of section 3201 of the Education Law became effective (L. 1969, ch. 342). Therefore, Di Sano does not apply here.
March 18, 1965, the Court of Appeals held that: “Here the Board of Eegents under authority of section 207 of the Education Law has declared racially imbalanced schools to be educationally inadequate. The Commissioner under sections 301 and 305 of the Education Law has implemented this policy by directing local boards to take steps to eliminate racial imbalance. These decisions are final absent a showing of pure arbitrariness.” (Matter of Vetere v. Allen, 15 N Y 2d 259, 267, cert. den. 382 U. S. 825.)
Here, Plan 21 is not arbitrary in any way.
May 27, 1965, the Court of Appeals upheld a plan in which “all but 29 of the children lived within walking distance of either school and said 29 would be given bus transportation, and that said reorganization would result in better utilization of both schools, substantial reduction in average class sizes thereof, improvement of the ethnic balances therein and additional improvement in the quality of education by the addition *1073 of other educational and professional benefits and services in both schools.” (Matter of Addabo v. Donovan, 16 N Y 2d 619, 620, cert. den. 382 U. S. 905.)
Here, Plan 21 reorganizes 8 schools to attain these ends.
This court judicially notices that the spirit of revolution is in the land. Militant, Communist groups, black and white, are seeking to destroy our universities and other schools. Our young school children need to know and understand each other in an atmosphere of understanding, friendliness, co-operation and love. Truly integrated schools, as evidenced by Plan 21, are our best hope for a strong, united America.
Therefore, subdivision 2 of section 3201 of the Education Law (L. 1969, ch. 342) is constitutional; Plan 21 is constitutional; thé complaint is insufficient; plaintiffs are not entitled either to a temporary or a permanent injunction.
Motion to dismiss the complaint is granted; motion for temporary injunction is denied. No costs.